M. ANDERSON BERRY (SBN 262879)
*aberry@justice4you.com*
GREGORY HAROUTUNIAN (SBN 330263)
*gharoutunian@justice4you.com*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95765
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

PAUL M. DEMARCO (SBN 112834)
*pdemarco@msdlegal.com*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219

*Attorneys for Plaintiff and the Putative Class*

**THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.A., a minor, by and through her guardian ad litem, Samuel Adams, *individually and on behalf all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PowerSchool Holdings, Inc.<br><br>and<br><br>PowerSchool Group, LLC<br><br>Defendants. | Case No. ______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

A.A., a minor, by and through her guardian ad litem, Samuel Adams ("Plaintiff") brings this Class Action Complaint against PowerSchool Holding, Inc. and PowerSchool Group, LLC[1] individually and on behalf all others similarly situated ("Class Members"), and alleges, upon personal knowledge and counsels' investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII")[2] including, but not limited to full names, Social Security numbers, grades, email addresses, telephone numbers, addresses, dates of birth, protected health information including medical information ("PHI," collectively, PII and PHI are "Private Information").

2. Defendant PowerSchool Group, LLC is a subsidiary company of Defendant PowerSchool Holding Inc. Defendants are jointly referred to as "PowerSchool" or "Defendant".

3. Defendant is a national education technology firm that provides cloud based education software for K-12 students and educators. Defendant maintains offices in the state of California.

4. To provide these services, and in the ordinary course of Defendant's business, Defendant acquires, possesses, analyzes, and otherwise utilizes Plaintiff's and Class Members' Private Information.

5. As a corporation doing business in California and having employees and customers in California, Defendant is legally required to protect personal information from unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction.

---

[1] PowerSchool Holdings, Inc. is the parent company of PowerSchool Group, LLC.

[2] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but is considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

6. With this action, Plaintiff seeks to hold Defendant responsible for the harms it caused and will continue to cause Plaintiff and millions of other similarly situated persons in a massive and preventable cyberattack. On December 28, 2024 PowerSchool discovered that cybercriminals infiltrated Defendant's inadequately protected network servers and accessed and exfiltrated highly sensitive Private Information belonging to Plaintiff and Class Members which was unprotected and unencrypted (the "Data Breach").

7. Plaintiff further seeks to hold Defendant responsible for not ensuring that Defendant maintained the Private Information in a manner consistent with industry standards.

8. On or around January 8, 2025 Defendant notified its customers, including public and private school districts throughout the United States, about the widespread Data Breach (the "Notice Letter").[3]

9. Defendant did not directly notify Plaintiff or Class Members of the Data Breach. Defendant's website or social media channels have no mention of the data breach or directions for people who may have been affected.[4]

10. Plaintiff and Class Members were wholly unaware of the Data Breach until they received Notice Letters from their schools or school districts. During this time, Plaintiff and Class Members were unaware that their sensitive Private Information had been compromised, and that they were—and continue to be—at significant risk of identity theft and various other forms of personal, social, and financial harm.

11. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

12. By acquiring, utilizing, and benefiting from Plaintiff's and Class Members' Private Information for its business purposes, Defendant owed or otherwise assumed common law, contractual, and statutory duties that extended to Plaintiff and Class Members. These duties

---

[3] Sample Notice Letter available at https://bloximages.newyork1.vip.townnews.com/local3news.com/content/tncms/assets/v3/editorial/e/ef/eef9dfe0-cd42-11ef-8a0d-9b6662ee1ec6/677da4657d7e6.pdf.pdf (last visited January 10, 2025).

[4] https://www.theverge.com/2025/1/10/24340556/powerschool-sis-data-breach-leak-student-data-us-canada-schools (last visited January 10, 2025).

required Defendant to design and implement adequate data security systems to protect Plaintiff's and Class Members' Private Information in its possession and to keep Plaintiff's and Class Members' Private Information confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, or theft.

13. Defendant breached these duties by failing to implement adequate data security measures and protocols to properly safeguard and protect Plaintiff's and Class Members' Private Information from a foreseeable cyberattack on its systems that resulted in the unauthorized access and theft of Plaintiff's and Class Members' Private Information.

14. Currently, the full extent of the types of Private Information, the scope of the breach, and the root cause of the Data Breach are all within the exclusive control of Defendant, its agents, counsel, and forensic security vendors at this phase of the litigation.

15. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the Plaintiff's and Class Members' Private Information was compromised through disclosure to an unknown and unauthorized criminal third party.

16. Upon information and belief, Defendant breached its duties and obligations in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing to comply with industry-standard data security practices; (5) failing to warn Plaintiff and Class Members of Defendant's inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (8) failing to utilize widely available software able to detect and prevent this type of attack, and (9) otherwise failing to secure

the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

17. Based on the type of sophisticated and targeted criminal activity, the type of Private Information involved, and Defendant's admission that the Private Information was accessed, it can be concluded that the unauthorized criminal third party was able to successfully target Plaintiff's and Class Members' Private Information, infiltrate and gain access to Defendant's network, and exfiltrate Plaintiff's and Class Members' Private Information for use in future fraud and identity theft related cases.

18. Defendant disclosed that the Private Information exfiltrated from its systems was not encrypted and contained the sensitive Private Information of students and staff members.[5]

19. As a result of Defendant's failures and the Data Breach, Plaintiff's and Class Members' identities are at a current and substantial imminent and ongoing risk of identity theft and shall remain at risk for the rest of their lives.

20. Plaintiff and Class Members must now closely monitor their personal accounts to guard against future identity theft and fraud. Plaintiff and Class Members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included and will include into the future: (a) reviewing financial statements; (b) changing passwords; and (c) signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

21. Plaintiff and Class Members have suffered numerous actual and concrete injuries as a direct result of the Data Breach, including: (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (e) loss of time heeding warnings and following its instructions in the Notice Letter; (g) deprivation of value of

[5] https://www.randolph.k12.ma.us/news/1802130/cybersecurity-memorandum-powerschool-data-breach#:~:text=Social%20Security%20numbers%20and%20dates,been%20destroyed%20at%20this%20time (last visited January 10, 2025).

their Private Information; (h) invasions of their privacy; and (i) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect it.

22. Plaintiff brings this action on behalf of all persons whose Private Information was compromised due to Defendant's failure to adequately protect Plaintiff's and Class Members' Private Information. Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct and asserts claims on behalf of the Class for negligence, breach of implied contract, common law invasion of privacy, unjust enrichment, and declaratory judgment and injunctive relief.

## PARTIES

23. Plaintiff A.A. is a 13 year-old minor. Plaintiff A.A. is a citizen of Ohio and resides in Cincinnati, Ohio. On January 9, 2025, A.A.'s father received a notification email from A.A.'s Assistant Superintendent informing him that Private Information concerning A.A. was compromised in the Data Breach.

24. Defendant PowerSchool Inc. is a corporation incorporated under the laws of the State of Delaware with its headquarters located at 150 Parkshore Drive, Folsom, Sacramento County, California 95630.

25. Defendant PowerSchool Group, LLC is a limited liability company organized under the laws of the State of Delaware with its principal address located at 150 Parkshore Drive, Folsom, Sacramento County, California 95630. PowerSchool Group, LLC is a subsidiary of PowerSchool Holdings, Inc.

26. Defendant PowerSchool Holdings, Inc. is the parent company of PowerSchool Group, LLC and was acquired by Bain Capital in October of 2024.

27. All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including the Plaintiff, is a citizen of a state different from Defendant.

29. This Court has general personal jurisdiction over Defendant PowerSchool because Defendant maintains a principal place of business is in this District and regularly transacts business in this District.

30. Venue is proper under 18 U.S.C § 1391(b)(1), (b)(1)-(2), and (c)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

***Background***

31. PowerSchool is the largest provider of cloud-based education software for K-12 education in the country, used by more than 18,000 customers and 60 million students globally. [6]

32. On its website, Defendant boasts that "we simply have more experience than anyone else in implementing educational technology, providing ongoing support and training, and releasing innovative features that support schools' and districts' evolving needs. Partnering with PowerSchool means reducing risk by relying on the industry's most trusted and proven partner."[7]

33. Defendant states that "At PowerSchool, we take our responsibility to protect student data privacy and to act responsibly as data processors to schools and districts extremely seriously. We believe ensuring the personal information contained in student education records is protected should be the standard globally and is at the center of how we build education technology at PowerSchool."[8]

34. Defendant further states that "As a signatory of the Student Privacy Pledge 2020 and holder of certifications from industry leaders such as TrustArc and Privo, PowerSchool strictly and

[6] https://www.powerschool.com/why-powerschool/?utm_medium=cpc-g (last visited Jan. 10, 2025).

[7] https://www.powerschool.com/why-powerschool/?utm_medium=cpc-g

[8] https://www.powerschool.com/blog/commitment-to-protecting-student-data-privacy/

proactively follows all legal, regulatory, and voluntary requirements for protecting student privacy including federal laws such the Family Educational Rights and Privacy Act (FERPA), the Child Online Privacy Protection Act (COPPA) and state regulations, such as California's Student Online Personal Information Protection Act (SOPIPA) and its variants.[9]

35. As a condition of providing its services, Defendant requires that its clients and users of its software supply it with Private Information.

36. As a condition of providing technology services for its clients, Defendant compiles, retains, and stores Private Information belonging to Plaintiff and Class Members.

37. Plaintiff and Class Members have entrusted Defendant with the Private Information since its founding and Defendant has created and maintains a massive repository of Personal Information belonging to millions for people, acting as a particularly lucrative target for data thieves looking to obtain, misuse, or sell Private Information.

38. In the ordinary course of its business, Defendant maintains the Private Information belonging to its customers, students, staff, current and past employees, and others.

39. However, PowerSchool did not maintain adequate security to protect its systems from infiltration by cybercriminals.

40. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

41. At every step, Defendant stores Plaintiff's and Class Members' sensitive Private Information and has a duty to protect that Private Information from unauthorized access.

42. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

[9] *Id.*

43. Plaintiff and Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use their Private Information solely for proper business and healthcare related services and purposes, and to prevent the unauthorized disclosure of their Private Information.

***The Data Breach***

44. On December 28, 2025, PowerSchool purportedly discovered that certain files on its network had been accessed and exfiltrated by an unauthorized party.[10]

45. Through its investigation, PowerSchool determined that its network and servers were subject to a cyberattack that impacted its network, thus resulting in information on its network being accessed and acquired without authorization.[11]

46. Upon information and belief, Plaintiff's and Class Members' Private Information was exfiltrated and stolen in the attack.

47. Furthermore, PowerSchool's investigation determined that the accessed systems contained Private Information belonging to Plaintiff and Class Members. Upon information and belief, this Private Information was accessible, unencrypted, unprotected, and vulnerable to acquisition and/or exfiltration by the unauthorized actor.

48. The type of Private Information accessed by the unauthorized actor in the Data Breach includes full names, Social Security numbers, driver's license numbers, individual tax identification numbers, financial account information, and medical information.[12]

49. While PowerSchool stated in the Notice Letter that it discovered the Data Breach on December 28, 2025, PowerSchool did not put a notice of the Data Breach on its website or send direct notice to Plaintiff or Class Members.

---

[10] *See* Notice Letter

[11] *Id.*

[12] *See https://www.randolph.k12.ma.us/news/1802130/cybersecurity-memorandum-powerschool-data-breach#:~:text=Social%20Security%20numbers%20and%20dates,been%20destroyed%20at%20this%20time. (last visited January 10, 2025).*

50. Defendant had obligations created by contract, industry standards, FERPA, common law, and its own promises and representations to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

51. Plaintiff and Class Members provided their Private Information directly and/or indirectly to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

52. PowerSchool has not offered any type of compensation or protection to Plaintiff and Class Members.

53. Beginning on or around January 8, 2025, Defendant issued Notice Letters to affected schools and school districts and offered a frequently asked question posting on its "PowerSchool Community" which is not available to Plaintiffs or Class Members.[13]

54. As a result of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the loss of privacy, loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

55. Plaintiff and Class Members remain at significant risk of identity theft and various other forms of personal, social, and financial harm. This risk will continue for their respective lifetimes.

56. Defendant's failure to timely detect and report the Data Breach left victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

57. This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

[13] *See* Notice Letter

58. The targeted cyberattack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Information of patients, like Plaintiff and Class Members.

59. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Private Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' and consumers' Private Information.

60. Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their Private Information which includes information that is static, does not change, and can be used to commit a myriad of financial crimes.

61. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, use their Private Information for authorized purposes only, and make only authorized disclosures of this information. Plaintiff and Class Members demand that Defendant safeguard their Private Information.

62. The unencrypted Private Information of Plaintiff and Class Members has been offered for sale on the dark web, as is the *modus operandi* of hackers. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

63. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information.

64. Due to PowerSchool's inadequate security measures Plaintiff and Class Members now face a present, immediate, and ongoing risk of fraud and identity theft that they will have to deal with for the rest of their lives.

///

///

***The Data Breach Was Foreseeable***

65. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the education services industry and other industries holding significant amounts of Private Information preceding the date of the breach.

66. PowerSchool's website has an entire resource section devoted to Cybersecurity and Data Privacy and offers online webinars regarding best practices in securing student data.[14]

67. At all relevant times, PowerSchool knew—or should have known—that Plaintiff's and Class Members' Private Information was a target for malicious actors. Despite such knowledge, PowerSchool failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' Private Information from cyberattacks that PowerSchool should have anticipated and guarded against.

68. The targeted attack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Information of patients, like Plaintiff and Class Members.

69. There were 116 confirmed ransomware attacks against educational institutions in 2024, impacting 1.8 million records.[15] Defendant knew or should have known that their electronic records and consumers' Private Information would be targeted by cybercriminals and ransomware attack groups.

70. Indeed, cyberattacks against the educational industry have been increasing.

71. Additionally, Defendant knew or should have known that its computer systems were a target for cybersecurity attacks because such warnings were readily available on the internet.

72. In April 2020 ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage,

---

[14] https://www.powerschool.com/resources/?filter_topics=cybersecurity-data-privacy (last visited January 10, 2025).

[15] https://statescoop.com/ransomware-education-sector-decline-2024/#:~:text=The%20report%20found%20that%20educational,of%20%24847%2C000%20in%20ransom%20payments (last visited January 10, 2025).

leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[16]

73. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published an online "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[17]

74. Considering the information readily available and accessible on the internet before the Data Breach and Defendant's involvement in data breach litigation, Defendant—having elected to store the unencrypted PII of Plaintiff and Class Members in an Internet accessible environment—had reason to be on guard for the exfiltration of the PII, and Defendant's type of business had cause to be particularly on guard against such an attack.

***The Data Breach Was Preventable***

75. Defendant could have prevented this Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class Members by properly training its employees to recognize and prevent cybersecurity risks and/or by implementing and following adequate retention policies to destroy the data it no longer needed. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members was exacerbated by the repeated warnings and alerts directed to U.S. companies warning that they should protect and secure sensitive data, especially in light of the substantial increase in cyberattacks.

**Defendant Fails to Comply with FTC Guidelines**

76. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

[16] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), available at https://www.zdnet.com/article/ransomware-mentioned-in1000- sec-filings-over-the-past-year/ (last visited January 10, 2025).

[17] U.S. CISA, Ransomware Guide – September 2020, available at https://www.cisa.gov/sites/default/files/publications/CISA_MSISAC_Ransomware%20Guide_S508C.pdf (last visited January 10, 2025).

According to the FTC, the need for data security should factor into all business decision-making.

77. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[18] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and, have a response plan ready in the event of a breach.[19]

78. The FTC further recommends that companies not maintain PII longer than necessary for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

79. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

80. These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that

[18] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 19, 2022).

[19] *Id*.

LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

81. Defendant failed to properly implement basic data security practices.

82. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

83. Defendant was at all times fully aware of its obligation to protect the Private Information of customers and patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**PowerSchool Fails to Comply with Industry Standards**

84. As shown above, experts studying cybersecurity routinely identify law firms as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

85. Several best practices have been identified that, at a minimum, should be implemented by providers like Defendant. These include but are not limited to: educating all employees; utilizing strong passwords; using multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

86. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

87. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable

cybersecurity readiness.

88. These foregoing frameworks are existing and applicable industry standards in the education technology industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

**Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft**

89. Cyberattacks and data breaches at law firms like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

90. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") wherein it noted that victims of identity theft face "substantial costs and time to repair the damage to their good name and credit record."[20]

91. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, criminals steal personally identifiable information to monetize it by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

92. The FTC recommends that identity theft victims take several steps to protect their

[20] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007). Available at https://www.gao.gov/new.items/d07737.pdf (last visited January 10, 2025).

personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[21]

93. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

94. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

95. Moreover, theft of Private Information is gravely serious because Private Information is an extremely valuable property right.[22]

96. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

97. It must also be noted there may be a substantial time lag—measured in years—between when harm occurs and when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

---

[21] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last visited January 10, 2025).

[22] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

98. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

99. Private Information is such a valuable commodity to identity thieves that, once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

100. There is a strong probability that entire batches of stolen information have been dumped on the black market and have yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

101. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

102. Private Information can sell for as much as $363 per record according to the Infosec Institute.[23] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

103. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[24] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for

[23] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited January 10, 2025).

[24] *Identity Theft and Your Social Security Number*, Social Security Administration (2018). Available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited January 10, 2025).

unemployment benefits, or apply for a job using a false identity.[25] Each of these fraudulent activities is difficult to detect. An individual may not know that his or his Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

104. Moreover, it is not an easy task to change or cancel a stolen Social Security number.

105. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[26]

106. This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[27]

107. Records, like those stolen from PowerSchool, are "often processed and packaged with other illegally obtained data to create full record sets (fullz) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark web sites to other criminals and "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[28]

108. Given these facts, any company that transacts business with a consumer and then

---

[25] *Id*.

[26] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited January 10, 2025).

[27] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited January 10, 2025).

[28] See *id*.

compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

109. For this reason, Defendant knew or should have known about these dangers and strengthened its data and email handling systems accordingly. Defendant was on notice of the substantial and foreseeable risk of harm from a data breach, yet PowerSchool failed to properly prepare for that risk.

110. Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access PowerSchool's computer network and systems which contained unsecured and unencrypted Private Information.

111. Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendant.

**Defendant's Response to the Data Breach is Inadequate to Protect Plaintiff and the Class**

112. Defendant failed to inform Plaintiff and Class Members of the Data Breach in time for them to protect themselves from identity theft.

113. Defendant stated that it discovered the Data Breach on December 28, 2024. However, Defendant did not directly notify affected individuals and did not disclose the Data Breach on its website. Even after Defendants began notifying local schools and school districts, Defendant provided only vague information as to exactly what types of Private Information was accessed. As a result, Plaintiff and Class Members are unsure as to the scope of information that was compromised and the risks they face.

114. Defendant's failure to timely notify the victims of its Data Breach meant that Plaintiff and Class Members were unable to take affirmative measures to prevent or mitigate the resulting harm.

**Plaintiff's and Class Members' Damages**

115. Given the sensitivity of the Private Information involved in this Data Breach,

Plaintiff and Class Members have all suffered damages and will face a substantial risk of additional injuries for the rest of their lives. Yet, to date, Defendant has not offered to compensate Plaintiff or Class Members for many of the injuries they have already suffered.

116. Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

117. Plaintiff and Class Members have suffered a loss of privacy.

118. Plaintiff's and Class Members' Private Information were all compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendant's computer system.

119. Plaintiff's and Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

120. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

121. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

122. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

123. Plaintiff's parents, on her behalf, and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

124. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

125. Plaintiff and Class Members were also harmed via benefit-of-the-bargain damages. Plaintiff's parents, on her behalf, and Class Members overpaid for services through school fees that were intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price paid on behalf of Plaintiff and Class Members to Defendant was intended to be used by Defendant to fund adequate security of PowerSchool' computer system(s) and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

126. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

127. Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

128. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an increased risk of future harm.

**Plaintiff A.A.**

129. At the time of the Data Breach, Defendant retained Plaintiff A.A.'s Private Information in its system.

130. Plaintiff A.A. is a minor child. Samuel Adkins is the father of Plaintiff A.A., and both are residents and citizens of the State of Ohio.

131. Plaintiff A.A.'s school district uses Defendant as its Student Information System provider.

132. On January 10, 2025, Samuel Adkins received an email from Plaintiff A.A.'s school district informing him that certain Private Information belonging to A.A. was compromised in the Data Breach.

133. As a result of the breach, Plaintiff A.A. is at a heightened risk for identity fraud. Therefore, her parents will need to monitor her credit for fraud attempts while she is a minor.

134. Plaintiff A.A. will need to continue to monitor her credit for potential fraud and identity theft into her adulthood. Given the highly sensitive nature of the information stolen, Plaintiff A.A. suffers present, imminent, and impending risk of injury arising from the substantially increased risk of theft.

135. The Data Breach has caused Plaintiff A.A. to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals and potentially sold on the Dark Web.

136. Plaintiff A.A. has suffered injury directly and proximately caused by the Data Breach, including: (a) compromise of Plaintiff A.A.'s valuable Private Information; (b) the imminent and certain impeding injury flowing from fraud and identity theft posed by Plaintiff A.A.'s Private Information being placed in the hands of, bought, sold, and used by cyber criminals; (c) damages to and diminution in value of Plaintiff A.A.'s Private Information, entrusted to Defendant for the sole purpose of obtaining necessary educational services, with the understanding and expectation that Defendant would guard this information against disclosure; and (d) continued risk to Plaintiff A.A.'s Private Information, which remain in the possession of Defendant and which are subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect A.A. Private Information.

## CLASS ALLEGATIONS

137. Plaintiff brings this nationwide class action on behalf of herself and others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

138. The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class**: All persons in the United States of America whose Private Information was compromised in the Data Breach.

139. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which

Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

140. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

141. This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below:

a. Numerosity, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least multiple thousands of individuals who had their Private Information accessed in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

b. Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

i. Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

ii. Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

iii. Whether Defendant had duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

iv. Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

v. Whether and when Defendant actually learned of the Data Breach;

vi. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

vii. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

viii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

ix. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

x. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

xi. Whether Defendant violated the consumer protection statutes invoked herein;

xii. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

xiii. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

xiv. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

c. Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

d. Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling

conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

e. Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

142. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

143. The nature of this action and laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged. Specifically, Defendant would otherwise

necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

144. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

145. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

146. Unless a Class-wide injunction is issued, Defendant may continue to fail to properly secure the Private Information of Class Members, refuse to provide proper notification to Class Members regarding the Data Breach, and continue to act unlawfully as set forth in this Complaint.

147. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

148. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e. Whether Defendant breached the implied contract;

f. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

i. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

## COUNT I

**Negligence**

**(On Behalf of Plaintiff and the Class)**

149. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 148.

150. Plaintiff and the Class were required to submit their Private Information to Defendant in order to receive services from Defendant's educational entity clients.

151. In providing their Private Information, Plaintiff and Class Members had a reasonable expectation that this information would be securely maintined and not easily accessible to, or exfiltrated by, cybercriminals.

152. By collecting and storing the Private Information of Plaintiff and members of the Class on its computer system, Defendant owed to Plaintiff and the Class a duty of reasonable care in handling and using this information and securing and protecting the information from being stolen, accessed, and misused by unauthorized parties. Pursuant to this duty, Defendant was

required to affirmatively design, maintain, and test its security systems to ensure that these systems were reasonably secure and capable of protecting the Private Information of Plaintiff and the Class. Defendant further owed to Plaintiff and the Class a duty to affirmatively implement systems and procedures that would detect a breach of its security systems in a timely manner and to timely act upon security alerts from such systems.

153. Defendant owed this duty to Plaintiff and the other Class members because Plaintiff and the other Class Members comprise a well-defined, foreseeable, and probable class of individuals whom Defendant should have been aware could be injured by Defendant's inadequate security protocols.

154. Defendant actively solicited its clients who entrusted Defendant with Plaintiff's and Class Members' Private Information when obtaining and using Defendant's services. To facilitate these services, Defendant affirmatively used, handled, gathered, and stored the Private Information of Plaintiff and Class Members. Attendant to Defendant's solicitation, use and storage, Defendant knew of its inadequate and unreasonable security practices regarding its computer systems and also knew that cybercriminals routinely attempt to access, steal, and misuse Private Information with which Defendant had been entrusted. As such, Defendant knew a breach of its systems would cause damage to Plaintiff and the Class. Defendant had a duty to act reasonably in collecting, storing, maintaining, and protecting the Private Information of its clients' customers and patients.

155. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

156. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain.

157. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

158. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant, either directly or indirectly, with their confidential Private Information, a necessary part of obtaining services from Defendant.

159. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

160. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

161. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

162. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

163. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

164. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

165. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

166. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully accessed by, and disclosed to, unauthorized third persons as a result of the Data Breach.

167. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

168. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

169. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

170. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

171. Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information which they were no longer required to retain pursuant to regulations.

172. Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

173. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Private Information of Plaintiff and the Class would not have been compromised.

174. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm—or risk of imminent harm—suffered by Plaintiff and the Nationwide Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and

maintaining appropriate security measures.

175. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and consumers and patients, which is recognized by laws and regulations including but not limited to the FTC Act and common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

176. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

177. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

178. Defendant's violation of Section 5 of the FTC Act constitutes negligence.

179. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

180. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

181. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their

Private Information; (iv) costs associated with placing freezes on credit reports; (v) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (vi) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

182. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including—but not limited to—anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

183. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

184. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**Breach Of Implied Contract**
**(On behalf of Plaintiff and the Class)**

185. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 148.

186. Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect their information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

187. Defendant acquired, stored, and maintained the Private Information of Plaintiff and the Class that it received either directly from them or from its clients.

188. Plaintiff and the Class were required to provide, or authorize the transfer of, their Private Information in order for Defendant to provide its legal services. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services.

189. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offer and provided their Private Information to Defendant.

190. Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

191. In accepting such information and payment for services, Plaintiff and the other Class Members entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

192. When Plaintiff and Class Members paid money either directly or through school fees and services charges, and provided their Private Information to Defendant's clients or Defendant either directly or indirectly, in exchange for services, they entered into implied contracts with their business associates, including Defendant, and intended and understood that Private Information would be adequately safeguarded as part of that service.

193. Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such Private Information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

194. The implied promise of confidentiality includes implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

195. The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the information that is placed in the control of its agents is restricted and limited to achieve an authorized medical purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (5) applying or requiring proper encryption; (6)

multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

196. Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their Sensitive Information to Defendant.

197. Defendant recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

198. Plaintiff and the other Class Members fully performed their obligations under the implied contracts with Defendant.

199. Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their Private Information as described herein.

200. As a direct and proximate result of Defendant's conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial, or alternatively, nominal damages.

## COUNT III
## Invasion of Privacy
## Common Law Invasion of Privacy – Intrusion Upon Seclusion
## (On behalf of Plaintiff and the Class)

201. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 148.

202. To assert claims for intrusion upon seclusion, one must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

203. Defendant intentionally intruded upon the solitude, seclusion and private affairs of Plaintiff and Class Members by intentionally configuring their systems in such a way that left them vulnerable to cyber-attack, thus permitting unauthorized access to their systems, which compromised Plaintiff's and Class Members' personal information. Only Defendant had control over its systems.

204. Defendant's conduct is especially egregious and offensive as they failed to implement adequate security measures to prevent, track, or detect in a timely fashion unauthorized access to Plaintiff's and Class Members' personal information.

205. At all times, Defendant was aware that Plaintiff's and Class Members' personal information in their possession contained highly sensitive and confidential personal information.

206. Plaintiff and Class Members have a reasonable expectation of privacy in their personal information, which also contains highly sensitive Personal Information.

207. Defendant intentionally configured their systems in such a way that stored Plaintiff's and Class Members' personal information was left vulnerable to malware/ransomware attack without regard for Plaintiff's and Class Members' privacy interests.

208. The disclosure of the sensitive and confidential personal information of thousands of consumers, was highly offensive to Plaintiff and Class Members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

209. Defendant's conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive information, in addition to social norms. Defendant's conduct would be especially egregious to a reasonable person as Defendant publicly disclosed Plaintiff's and Class Members' sensitive and confidential personal information without their consent, to an "unauthorized person," *i.e.*, hackers.

210. As a result of Defendant's actions, Plaintiff and Class Members have suffered harm and injury, including—but not limited to—an invasion of their privacy rights.

211. Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's intrusion upon seclusion and are entitled to just compensation.

212. Plaintiff and class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and heightened stress, fear, anxiety, and risk of future invasions of privacy.

///

///

**COUNT IV**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

213. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 148.

214. This claim is brought in the alternative to Plaintiff's claim for breach of implied contract.

215. Defendant benefited from receiving Plaintiff's and Class Members' Private Information by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

216. Defendant also understood and appreciated that Plaintiff's and Class Members' Private Information was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

217. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant, either directly or indirectly, with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their Private Information protected with adequate data security.

218. Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form their Private Information as well as payments made on their behalf as a necessary part of their receiving insurance and/or other products or services. Defendant appreciated and accepted that benefit. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

219. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiff and Class Members.

220. As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of

the portion of each payment made that is allocated to data security is known to Defendant.

221. Defendant, however, failed to secure Plaintiff' and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit that Plaintiff and Class Members provided.

222. Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiff and Class Members and derived revenue by using it for business purposes. Plaintiff and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

223. Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

224. If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed their Private Information to be provided to Defendant.

225. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

226. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

227. Plaintiff and Class Members have no adequate remedy at law.

228. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of

privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

229. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

230. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**COUNT V**
**Declaratory Judgment and Injunctive Relief**
**(On behalf of Plaintiff and the Class)**

231. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in 1 through 148.

232. Plaintiff pursues this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

233. Defendant owes a duty of care to Plaintiff and the Class that requires it to adequately secure Plaintiff's and Class Members' Private Information.

234. Defendant failed to fulfill their duty of care to safeguard Plaintiff's and Class Members' Private Information.

235. Plaintiff and the Class are at risk of harm due to the exposure of their Private Information and Defendant's failure to address the security failings that lead to such exposure.

236. Plaintiff, therefore, seek a declaration that (1) Defendant's existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with their explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

237. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

a. Engaging third-party security auditors and internal personnel to run automated security monitoring;

b. Auditing, testing, and training its security personnel regarding any new or modified procedures;

c. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

d. Conducting regular database scanning and security checks;

e. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

f. Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

g. Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves.

///

///

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Classes, and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii. requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct

testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and

assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; and

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

D. For an award of damages, including, but not limited to, actual, consequential, statutory and nominal damages in an amount to be proven at trial, in excess of $5,000,000.

E. Reasonable attorneys' fees and costs, and any other expense, including expert witness fees;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Nationwide Class hereby demands that this matter be tried before a jury.

Date: January 10, 2025 Respectfully Submitted,

*_/s/ M. Anderson Berry_*
M. ANDERSON BERRY (SBN 262879)
*aberry@justice4you.com*
GREGORY HAROUTUNIAN (SBN 330263)
*gharoutunian@justice4you.com*
**CLAYEO C. ARNOLD**

**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95765
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

Paul M. DeMarco (SBN 112834)
*pdemarco@msdlegal.com*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219

*Counsel for Plaintiff and Putative Class*